UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  16-31425 (AMN) |
| NANCY FILIPEK. | : | Chapter 13 |
| *Debtor.* | : | |
| | : | Re:  ECF No. 102; Proof of Claim 11-2 |

MEMORANDUM AND RULING
SUSTAINING OBJECTION, IN PART,
AND ALLOWING CLAIM 11-2, IN PART

On September 12, 2016, Nancy Filipek (the "Debtor"), filed this chapter 13 case. ECF No. 1.  The deadline for filing proofs of claim was set for January 26, 2017.  ECF No. 2.  The Debtor listed a debt to Michael Curry ("Curry"), for $1.00, on her schedules. ECF No. 10.  Curry filed a proof of claim, on June 27, 2017, (the "June POC"), claiming he was owed $73,973.40.  POC 11-1.  The Debtor objected, asserting the June POC was untimely.  ECF No. 43.  The Debtor later conceded that Curry may not have received notice of the case, withdrew her objection, and the court issued an order giving other creditors an opportunity to object to the June POC.  ECF No. 83.

Creditor Achieve Financial Credit Union ("Achieve") objected to the June POC asserting the amount of $73,973.40 was unsupported and asked that the claim be disallowed.  ECF No. 92.  Following a hearing on Achieve's objection, the court ordered Curry to file an amended proof of claim.  ECF No. 100.  Curry filed amended proof of claim on December 8, 2017 (the "December POC") claiming he was owed $33,811.76. POC 11-2.  Achieve objected again, arguing Curry was not entitled to interest, and Curry responded.  ECF Nos. 102, 107, 109.

1

According to Curry, he loaned a total of $27,000 to the Debtor between 1997 and 1998, and by July 2016, the total debt had grown to $33,811.76, including additions for interest and various costs, and deductions for payments.  According to the Connecticut Superior Court, Hon. Jack W. Fischer, judgment entered in favor of Curry against Filipek on November 14, 2012, in the amount of $26,900.00 and costs of $335.00 were awarded, for a total of $27,235.00 (the "Judgment").  *Curry v. Filipek*, case number NNICV115006121S, (Conn. Sup. Ct. Nov. 14, 2012) Order number 420173.  No interest was awarded.

Achieve asks the court to reduce Curry's claim to $18,819.14; the unpaid amount of the Judgment.  ECF No. 102.  Curry, in response, concedes the Judgement is "silent as to the issue of post-judgment interest."  ECF No. 109, ¶ 5.  However, Curry argues, because he did request post-judgment interest before the Superior Court, though the order is silent on the question, this court should award him post-judgment interest, both based upon Conn. Gen. Stat. §§ 52-356d and 37-3a, and for "equitable reasons."  ECF No. 109, ¶ 5, 19 , 20.

Turning first to the statutory arguments, Curry relies on § 52-356d(e) of the Connecticut General Statutes that provides in pertinent part, "[i]nterest on a money judgment shall continue to accrue under any installment payment order on such portion of the judgment as remains unpaid."  Curry also relies on § 37-3a of the state statute that provides, "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions…"  In *Ballou v. Law Offices Howard Lee Schiff, P.C.*, the Connecticut Supreme Court interpreted the interplay between these two statutory provisions and concluded that while Conn. Gen. Stat. § 52-356d(e) provides

2

for interest on installment payment orders, like the Judgment here, the accrual of

interest is not self-executing.  Instead, interest will accrue only if it has first been

awarded under § 37-3a.  304 Conn. 348, 359 (2012).

> It is apparent, therefore, that § 52–356d(e) addresses the situation in
> which the court already has awarded interest on the money judgment in
> the exercise of its discretion under § 37–3a(a), and, thereafter, either the
> judgment creditor or the judgment debtor seeks and obtains an installment
> payment order from the court.  When that occurs, § 52–356d(e) simply
> provides that the interest awarded on the money judgment prior to the
> entry of the installment payment order continues to accrue on the
> remaining balance on the judgment until all installment payments have
> been made.  In light of this temporal relationship between the money
> judgment and the installment payment order, the reference in § 52–
> 356d(e) to the continuation of the accrual of interest pertains to a
> preexisting order of interest on the money judgment, not to the imposition
> of interest triggered by the entry of an installment payment order.

> *Ballou*, 304 Conn. at 359.

The decision to award post-judgment interest, lies in the trial court's discretion, under

Conn. Gen. Stat. § 37-3a(a).  *Ballou*, 304 Conn. at 359.[1]

The court is mindful of the Connecticut Supreme Court's decision in

*Sikorsky Fen. Credit Union v. Butts*, 315 Conn. 433 (2015), that distinguished between

post-maturity interest, and post-judgment interest, as follows,

> Sections 37–1 and 37–3a both relate to interest, but they serve markedly
> different purposes. They reflect our law's long-standing recognition of two
> distinct types of interest: (1) interest, usually by agreement, as
> compensation for a loan (interest *eo nomine* [or interest as interest]); and
> (2) interest as damages for the detention of money.  Section 31-1a
> governs interest *eo nomine*, whereas § 37-3a(a), by its express terms,
> applies to interest 'as damages for the detention of money…'

---

[1]   Curry's reliance on *DiLieto v. Country Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38 (2013), is misplaced.  ECF No. 109, ¶¶ 16, 17.  That case addressed post-judgment interest in negligence cases, which under Conn. Gen. Stat. § 37-3b, is mandatory.  *DiLieto*, 310 Conn at 48.  The case does not apply to the judgment on an unpaid loan that is at issue here.

*Sikorsky*, 315 Conn. at 439-40 (citations omitted).

However, Curry's only evidence in support of his claim is the Judgment itself without any basis for the court to determine a maturity date for the underlying loans. While Connecticut courts have awarded post-maturity interest to judgments that were, like the instant Judgment, awarded before *Sikorsky* was decided, those cases contained a more comprehensive record to establish the maturity date of the loan itself.  *D.A.N. v. Coady*, 2015 Conn. Super. LEXIS 2321, *4-*9, case number HHDCV116022683 (Conn. Sup. Ct. Sept. 3. 2015) (awarding plaintiff post-maturity interest, under *Sikorsky*, on a 1991 judgment).

Curry's contention that this court should infer that post-judgment interest should apply absent language to the contrary in unsupported.  The statutory scheme does not create a presumption of post-judgment interest and *Ballou* conclusively states that the decision to award post-judgment interest is discretionary.  *Ballou*, 304 Conn. at 383 ("The court, in its discretion may choose to award interest on that judgment…"). Furthermore, the Judgment is unambiguous on this issue and where that is true, "the reviewing court must adopt, and give effect to, the plain meaning of the judgment….'" *In re 85-02 Queen Blvd. Assocs*, 212 B.R. 451, 455 (Bankr. E.D.N.Y. 1997) (*quoting* 46 Am.Jur.2d Judgments § 93 (1994)).  Because the Superior Court's judgment here was clear, unambiguous, and silent as to any post-judgment interest and thus none was awarded, this court cannot now infer it.

Finally, Curry asserts that "equitable" reasons compel this court to award him post-judgment interest.  This court cannot exercise any equitable power to sit as a court of appeals for the state court.  *Osagie v. U.S. Equities Corp*, 2017 WL 3668590 at *7 (D.

4

Conn. Aug. 24, 2017).  Moreover, under Connecticut law Curry is precluded by *res judicata* from re-litigating the issue of post-judgment interest.[2]  *Osagie*, 2017 WL 3669590 at *7 (*quoting Dowling v. Finley Assocs.*, 248 Conn. 364, 373 (1999) ("Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim.")).

For these reasons, Achieve's objection is SUSTAINED in part.  Curry's claim against the Debtor's estate is MODIFIED and REDUCED to reflect the $11,592.58 in payments by the Debtor to satisfy the Judgment, and is ALLOWED in the amount of $15,642.42.

February 9, 2018, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut

---

[2]  While the application of *res judicata* is dispositive of Curry's request, in the alternative, the court lacks jurisdiction to "modify" the Judgment to award post-judgment interest.  28 U.S.C. § 1257; *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) ("Congress [has] empowered only [the Supreme Court] to exercise appellate authority 'to reverse or modify a state-court judgment.'") (*quoting Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923))*.*  The Supreme Court recently narrowed the scope of the *Rooker-Feldman* doctrine, holding "[t] the doctrine applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Davis*, 546 U.S. 459, 466 (2006) (*quoting Exxon*, 544 U.S. at 291); *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) ("*Rooker–Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced."). Though this case is a not a prototypical application of *Rooker-Feldman*, as Curry won in the Superior Court, he was the plaintiff below, and now claims injury as a result of the Judgment, and asks this court to modify the Judgment in his favor.